In the Matter of the Estate of CHARLES G. EMERY, Deceased.

Surrogate's Court, Jefferson County, July 1, 1947.

*Paul E. Brown* for Charles G. Emery, 2d, and another, petitioners.

*Paul E. Porter,* special guardian for infant remaindermen.

WRIGHT, S. The will of Charles Goodwin Emery was admitted to probate in this court on the 23d day of January, 1915.

Article First of the will provides as follows:

" My real property in the St. Lawrence River, opposite Clayton, in the County of Jefferson and State of New York, known as Calumet Island, containing about six acres more or less, and the Shoal surrounded by a circular wall, and the Island known as Cap Box Island, both adjoining Calumet Island, together with the dwellings, boat-houses and other buildings and erections and improvements upon said Islands and Shoal, and all the appurtenances thereto belonging, and all the fixtures, fittings, equipments, appliances and machinery, and all boats, furniture, silver, linen pictures and ornaments, all household goods and wares of every nature, and all implements, tools and utensils, and every other manner of personal property belonging to me thereon or attached thereto, not, however, to include my large steel steam yacht ' Calumet ', its apparel and furnishings, I give, devise and bequeath as follows:

" 1. Should my son, Frank Whitney Emery, survive me, to him for and during his natural life and upon his death to my grandson Charles Goodwin Emery, 2nd, for his natural life should he survive both his father and me;

" 2. Should my son not survive me and my said grandson survive me, to my said grandson for his natural life;

" 3. Should neither my son nor my said grandson survive me, then upon my death, or if both of them survive me then upon the expiration of the life estates above granted to them, or if only one of them survive me then upon the expiration of the life estate above granted to such survivor, I give, devise and bequeath said property in fee simple absolutely to the issue of my said grandson per stirpes and not per capita.

" 4. I hereby direct that neither of the said Islands or the said Shoal shall be sold during the existence of any of the life

estates hereinbefore granted, and that the power of sale hereinafter given to my executors and trustees shall not apply thereto.''

Article Second of the Will provides as follows: '' I hereby give and bequeath to my trustees hereinafter named the sum of One hundred thousand dollars to be held by them in trust and invested by them, and to receive the income thereof, and to apply the net income thereof to the maintenance in good condition and repair of the buildings, sea walls and grounds on Calumet Island, Cap Box Island and the Shoal adjoining Calumet Island, and to the payment of taxes thereon and of insurance on the buildings, improvements and the property thereon, and to apply any moneys collected from any such insurance to the maintenance, repair or replacement of any of said property during any life tenancies of the said Islands created by or arising under the foregoing provisions of Clause ' First ' of this Will. Subject to the foregoing trust, I give the said principal sum of One hundred thousand dollars to the person or persons in whom the remainder in said Islands shall vest in fee as hereinbefore provided.''

Frank Whitney Emery, the son of the testator and first life tenant, died in 1920.

This proceeding is brought by the second life tenant, Charles Goodwin Emery 2d, and by Peggy Emery Engl the great granddaughter of the testator who is one of the remaindermen. In addition to Peggy E. Engl there are two other great grandchildren remaindermen in being, to wit: Frank Whitney Emery 2d, twenty years of age, and Marshall Sinclair Emery, seventeen years of age.

The petition asks for authority to raze certain buildings on Calumet Island and to dispose of certain of the personal property in such buildings.

Calumet Island is located in the main channel of the St. Lawrence River about a mile from the village of Clayton and is one of the Thousand Islands archipelago.

During the years 1895, 1896 and 1897 the testator developed Calumet Island as an estate for a summer residence. The principal building known as the '' Castle '' is built of cut red sandstone with tile roof. It has three stories and upwards of thirty rooms, one of which is a large ballroom. Thirty-five servants were employed. The Castle was last occupied in 1908. On the very infrequent occasions when the present life tenant has visited the island since 1920 he has occupied a building known as the '' Lodge '', a substantial frame structure. There

are several other buildings on the island including a frame building known as the " Men's House ", formerly used to house male employees; a frame building known as the " Laundry "; a frame building known as the " Old Electric Light Plant "; and a high water tower, the first three stories being built of stone and the superstructure is of wood. With the exception of the water tower which is now used for storage, and the Lodge, these buildings have not been used for a great many years and are in need of much repair.

This island property, including two small islands, has been assessed for real estate taxes at $70,000. Subsequent to the institution of this proceeding, negotiations have been had by the life tenant with the assessors of the Town of Clayton whereby the assessment has been reduced to $35,000 for the 1948 tax roll. Because of the material reduction in taxes, the prayer of the petition as to authorization to raze the Castle has been withdrawn. The proceeding is now directed toward authorization to raze the following buildings:

1. The building known as the Men's House.
2. The building known as the Laundry.
3. The building known as Old Electric Light Plant.
4. The frame superstructure of the water tower; and for authorization to dispose of the personal property located in the above buildings and the personal property still remaining in the Castle.

The remainderman Peggy Emery Engl has never visited Calumet Island. The other remaindermen last visited the island in 1938 or 1939. Until a recent brief visit the present life tenant had not been at the island since that time.

In 1930 The Northern New York Trust Company was substituted as the trustee under paragraph second. During the administration of the trust, the principal has increased about four thousand dollars with the result that there is in the principal fund approximately one hundred four thousand dollars.

The gross income from the trust during the last four years has averaged three thousand nine hundred dollars and the disbursements three thousand six hundred dollars. The general trend of yield on investments has been downward and rate of taxes has increased.

After applying the income to payment of taxes and insurance there is insufficient for maintenance of the property. Because of the fact that the buildings are exposed to weather conditions of severe winters and heavy winds in summer the buildings

require that a substantial sum be expended if they are to be maintained properly.

The buildings have been broken into on many occasions. Damage has been done to the interiors by vandals and much personal property has been stolen.

To continue to expend moneys to maintain those frame buildings which are of no use to the present enjoyment of the island would be waste. To continue to retain such personal property under conditions of severe cold in winter and dampness in summer will result in their complete deterioration, if they are not sooner lost through theft, and they will be of no ultimate benefit to the remainderman.

Basing my determination upon the broad powers of a court of equity, I am of the opinion that the best interests of the life tenant and the remaindermen would be served by authorizing the razing of the Men's House, the Laundry and the Old Electric Plant. I am also of the opinion that authorization should be given to dispose of the personal property in the last three mentioned buildings and in the water tower, together with the personal property still remaining in the Castle. It is possible that these buildings may be sold for removal on the ice or by barge and an attempt should be made to obtain some financial benefit from them. Whatever proceeds there are from the disposition of those buildings together with the proceeds from the sale of such personalty will be directed to be added to the funds in the hands of the trustee for expenditure on maintenance of the remaining property. I will authorize such disposition to be made by the life tenant upon his filing a bond in the sum of $15,000, conditioned upon his properly carrying out such duties and properly accounting for the proceeds. Before razing or disposing of the Men's House, the Laundry and the Old Electric Light Plant all proposed contracts in connection therewith shall be reported to the court for approval.

No authority is granted with respect to the razing of any part of the water tower.

Submit decree accordingly.